UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY ALLEN GRESSLER,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

Case No. 1:16-cv-987

HON. JANET T. NEFF

## **OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-nine years of age on the date of the ALJ's decision. (PageID.85, 124.) He completed highschool and was previously employed as a machinist and as a computer numerically controlled operator. (PageID.86, 111.) Plaintiff applied for benefits on February 4, 2014, alleging disability beginning June 20, 2013, due to a back injury. (PageID.124, 191–192.) Plaintiff's application was denied on June 6, 2014, and Plaintiff subsequently requested a hearing before an ALJ. (PageID.140–145.) On June 29, 2015, Plaintiff appeared with his counsel before ALJ Donna J. Grit for an administrative hearing at which time Plaintiff and a vocational expert (VE)

2

both testified. (PageID.78–116.) On July 17, 2015, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.58–77.) On July 8, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–31.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since June 20, 2013, the alleged disability onset date. (PageID.63.) At step two, the ALJ determined Plaintiff had the severe impairments of status post epidural and muscular abscess, status post lumbar decompressive surgery, epidural fibrosis, anxiety, and depression. (PageID.64.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.64–66.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following non-exertional limitations. The claimant is unable to perform crawling, kneeling, and climbing of ropes, ladders, and scaffolds. He can perform occasional stooping, crouching, and balancing. The claimant requires a sit/stand option that allows him to change from sit to stand and stand to sit every 30 minutes. The claimant can have no more than occasional exposure to vibration or extremes of cold. He is unable to work at unprotected heights or with dangerous moving machinery. The claimant can understand, remember, and perform simple tasks and make simple decisions. He can adapt to routine changes in the workplace.

(PageID.66.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (PageID.72.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as an inspector (1,100 regional and 52,000 national positions), as a final assembler (1,200 regional and 54,000 national positions), and as a surveillance system monitor

4

(1,000 regional and 50,000 national positions.) (PageID.113–114.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.73.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from June 20, 2013, the alleged disability onset date, through July 17, 2015. (PageID.73.)

## DISCUSSION

### 1. The ALJ's Evaluation of the Opinion Evidence.

In his first claim of error, Plaintiff contends the ALJ failed to properly apply the treating physician rule to the opinion of Dr. William Baer. Specifically, Plaintiff contends that the ALJ failed to provide good reasons for assigning less than controlling weight to the opinion. For the reasons laid out below, the Court disagrees.

#### A. Dr. Baer's Opinion.

In support of his application for benefits, Plaintiff submitted a sworn statement from Dr. William Baer, his treating physician. (PageID.796.) In his statement, Dr. Baer reported he had been treating Plaintiff for the last twelve years. In June 2013, Plaintiff developed a lumbar abscess with symptoms of back pain that was refractory to over the counter medications. (PageID.798.) Plaintiff was sent for an MRI but complications arose because it was too uncomfortable for Plaintiff to lie on a table. Plaintiff went to the ER and was able to undergo testing. Those tests revealed an infected abscess along the spinal tract that went from Plaintiff's last thoracic vertebrae to the second sacral vertebrae. (*Id.* at PageID.799.) The abscess had also migrated to the adjacent musculature. (PageID.800.) Plaintiff subsequently underwent surgery from the T-11 through S-2 vertebrae. (PageID.801.) Dr. Baer noted that as a result of the surgery there was a "very real" likelihood that

5

scar tissue from the surgery would eventually encase and potentially entrap or compromise Plaintiff's nerve roots. (PageID.801-802.) In fact, Plaintiff underwent an MRI in January 2014 that found evidence of nerve root encasement. (PageID.803.) The MRI showed the abscesses had resolved, but revealed extensive surgical change and scar tissue showing nerve root entrapment at L4-5 and L5-S1. (PageID.803.)

Dr. Baer further stated that after surgery, Plaintiff attempted to return to work for two to four hours a week, but was unable to tolerate it. (PageID.802.) Additional surgery was not recommended because it would create additional inflammation and scar tissue. (PageID.804.) Because of these entrapments, the doctor stated that Plaintiff "[m]ost definitely" was experiencing pain. (PageID.804.) The doctor had tried various medications to treat this pain, with limited success. (PageID.804-805.)

Plaintiff's attorney then asked the doctor several questions regarding Plaintiff's functional limitations. (PageID.805.) Dr Baer responded that Plaintiff could not return to his past work because of his refractory pain and the increased possibility of sustaining further injury. (PageID.805.) Regarding Plaintiff's ability to lift or carry on a regular basis, the doctor responding that anything over five to ten pounds was not an option. (PageID.806.) Plaintiff's attorney then asked whether Plaintiff would be capable of performing a range of sedentary work, which he defined as sitting most of the day with lifting up to ten pounds and only occasional walking or standing. An individual would further be unable to miss more than two days of work a month and would have to be on task no less than ninety percent of the time. (PageID.806.) The doctor responded that it would be "awfully difficult" for Plaintiff to do this work. He noted that Plaintiff could not sit or stand for any extended period of time, which he defined as being as short as fifteen to thirty minutes.

6

(PageID.807.) Furthermore, Plaintiff's ability to concentrate would be very difficult because of his pain, and as such Plaintiff could not work more than two to four hours. (PageID.807.) The doctor did not expect Plaintiff's condition to improve. (PageID.807.)

### B. The Treating Physician Doctrine Generally

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating physician if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

7

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence'" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinoin with the record as a whole; (5) the specialization of the treating source; and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

    C.    *Analysis of the ALJ's Decision.*

After summarizing Dr. Baer's opinion, the ALJ gave it partial weight. (PageID.72.) While she agreed with the doctor that Plaintiff could not return to his past work, the ALJ found the doctor's other opinions all were inconsistent with the doctor's treatment notes and other record evidence. In arguing that the ALJ failed to provide good reasons for this determination, Plaintiff notes three things: Dr. Baer had years of experience in treating Plaintiff, the doctor referenced

8

objective studies in rendering his opinion, and Plaintiff continues to experience symptoms. (PageID.895.) None of these considerations warrant relief. The experience and treatment history of Dr. Baer is not in question. The ALJ clearly understood the doctor qualified as a treating physician. (PageID.71.) Nor did the ALJ discount the opinion because the doctor had failed to support his opinions with citations to the record. (PageID.71.) Rather, the ALJ found that the doctor's opinions were inconsistent with the doctor's own findings. While it is plain that Plaintiff continues to experience symptoms from his impairments, the ALJ's determination that the record is inconsistent with the extreme limitations offered by Dr. Baer is well supported.

After undergoing surgery on his back Plaintiff began to improve. (PageID.303.) He was discharged in good condition with instructions for no bending or twisting, and no lifting over ten pounds. He further could not tolerate any sitting for longer than thirty minutes. (PageID.304.) Plaintiff was instructed to follow up with his surgeon, Dr. John Keller, in two weeks. (PageID.304.) At that July 17, 2013, visit, Plaintiff was described as doing "fairly well" though he still had a fair amount of back pain. (PageID.395.) Because there were some continuing issues with his wounds, Plaintiff was referred to the wound clinic for treatment, which Dr. Keller thought would help aid Plaintiff's recovery and reduce his pain. (PageID.394–395.) It appears that Dr. Keller was correct. At his first visit with the clinic, Plaintiff complained of severe pain when his wound was manipulated. (PageID.487.) But he had a normal gait, and his extremity muscle strength was grossly intact and equal. (PageID.490.) By July 31, 2013, Plaintiff reported he was doing well and was in much less discomfort. (PageID.555.) A month later, on August 22, 2013, Plaintiff's wife stated Plaintiff was almost asymptomatic and neurologically intact, and his wound was healing nicely. (PageID.439.) Plaintiff himself denied any pain. (PageID.636.) This continued through the

9

following month, where it was noted that there was no pain present. (PageID.704.) On October 9, 2013, Plaintiff was discharged from the wound clinic because he had achieved complete healing. (PageID.717.) Dr. Keller subsequently referred Plaintiff to Dr. James Ellis for physical rehabilitation. (PageID.471.)

At Plaintiff's first visit with Dr. Ellis, on October 11, 2013, he complained of residual back pain. But Plaintiff expressed a desire to return to a light duty job in two or three weeks. Dr. Ellis noted that Plaintiff was able to sit for about twenty minutes without any problem. Though he was stiff, he was also able to get up and walk without any difficulty. He could heal and toe walk, but had difficulty doing even a partial squat. (PageID.760.) The doctor ordered a course of physical therapy. (PageID.760.) On November 1, 2013, both Plaintiff's pain and functional use were improving. (PageID.762.) He felt seventy percent better and wanted to return to work. (PageID.762.) He was now able to squat without any difficulty and had a negative straight leg raise test. (PageID.762.) Plaintiff was released to work four hours a day with a ten pound lift restriction. It was noted that after two weeks Plaintiff would be able to increase his hours and weight limits. (PageID.763.) Two weeks later, however, while Plaintiff report his symptoms had improved, he also noted they had amplified. (PageID.764.)

The following year, during January 2014, Plaintiff reported his pain was worse and his functional ability had decreased. He was still doing his light duty job, but only two hours a day. (PageID.766.) But a physical examination demonstrated he still had full hip knee and ankle range of motion, as well as a negative straight leg raise test. (PageID.767.) An MRI was ordered and Plaintiff's prescriptions were adjusted. The MRI revealed mild epidural fibrosis in the recesses of the L4-5 vertebrae that abutted the traversing L5 nerve roots and, in the recess at the L5-S1 level,

10

it abutted and traversed the right S1 nerve foot. There was moderate right L4-L5 nerual foraminal narrowing. (PageID.779.)

On January 29, 2014, Plaintiff reported his legs were "a lot better" but complained of constant back pain. It was noted he was working two hours a day. But, rather than the light duty restrictions he had been given, he described he was doing work that was "quite heavy" and unpredictable. (PageID.769.) Plaintiff's medications were adjusted and another course of therapy was ordered. (PageID.770.) In March, Plaintiff complained his functional use had not changed and he was not any better. He reported he was working four hours a day and that, despite his restrictions, he was frequently pushing one hundred pound weights. (PageID.772.) Plaintiff had increased pain with flexion and extension and could bend only to the mid knee. He still, however, had a negative straight leg raise test and full strength. (PageID.773.) On March 31, 2014, Plaintiff reported his pain was worse. The therapist found that there were no pain behaviors, and his strength had increased, but he did have intensified pain. (PageID.775.) That said, Plaintiff stood during the examination and was able to move around freely. Dr. Ellis noted it was unlikely Plaintiff would ever return to his current job and stated that he could see Plaintiff on an as needed basis. (PageID.776.)

Plaintiff underwent a consultative examination with Dr. Grant Hyatt, an orthopaedic surgeon, on April 14, 2014. After conducting a physical examination, Dr. Hyatt noted that Plaintiff's gait and stance reflected an antalgic component relative to weightbearing on the right lower extremity. (PageID.822.) There was tenderness to palpation over the paraspinal columns, and limited range of motion was noted. (PageID.822.) Dr. Hyatt concluded that Plaintiff was restricted to a lift/carry limit of twenty to twenty-five pounds, should avoid repetitive bending, twisting and

11

stooping and that he should be able to change positions "from time to time." (PageID.824-825.) He also concluded that Plaintiff had not reached maximum medical improvement. (PageID.825.)

At bottom, these records are consistent with the ALJ's determination that Plaintiff could not return to his past relevant work. Though he purported to return to "light duty" work, Plaintiff does not appear to have followed those restrictions and in fact performed heavy work, albeit not for a full eight-hour workday. Plaintiff's complaints of increased pain must be viewed through this lens. Clearly, Plaintiff is unable to do such heavy work. But those records do not support Dr. Baer's opinions that Plaintiff could not do sedentary work. Plaintiff's wound had completely healed, and several objective tests returned normal results. These are consistent with, not contrary to, the ALJ's decision. Accordingly, substantial evidence supports the ALJ's observation that Dr. Baer's extreme limitations were inconsistent with the objective record. Plaintiff's first claim of error is therefore rejected.

### 2. Plaintiff's Credibility.

At the administrative hearing, Plaintiff alleged that he was impaired to an extent far greater than as ultimately recognized by the ALJ. After summarizing Plaintiff's arguments, the ALJ wrote:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(PageID.62.) Plaintiff notes that the above language is similar to that used across many ALJ decisions and further claims that by using such "boilerplate" language to discount his credibility, the ALJ's decision is unsupported by substantial evidence. Plaintiff's argument is without merit.

12

Meaningful appellate review of an ALJ's credibility determination requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Put differently, the ALJ's credibility evaluation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The thrust of Plaintiff's claim is that the above quoted language is too vague to discount his credibility. If all the ALJ had done was to provide a summation of the evidence from this case and then discount Plaintiff's allegations using the above paragraph, as Plaintiff appears to contend is the case, Plaintiff may well have a valid claim. *See Gonzalez v. Comm'r of Soc. Sec.,* No. 1:06–CV–687, 2008 WL 584927, at *6 (W.D. Mich. Jan. 17, 2008). But that is not what the ALJ did here, and the mere use of this language to introduce a larger credibility discussion is not reversible error. Indeed, as the Sixth Circuit has recognized, the "chief concern with the popularity [of boilerplate language] is the risk that an ALJ will mistakenly believe it sufficient to explain a credibility finding, as opposed to *merely* introducing or summarizing one." *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) (emphasis in original). In this case, the ALJ's discussion went far beyond the use of the above language. Throughout her decision, the ALJ found inconsistencies between Plaintiff's allegations and the objective record evidence. (PageID.67–68.) The ALJ also found Plaintiff's testimony was inconsistent with the record regarding his activities of daily living. (PageID.70.) The ALJ then concluded:

> While the evidence also indicates the claimant has a good work history, the longitudinal record is inconsistent with the extent of his alleged symptoms and limitations. The claimant has had ongoing pain complaints, but these complaints are not supported by the objective evidence of record. The claimant has had generally normal objective examination findings and while there is some mental health

13

> symptoms involved as well, the evidence does not indicate he would
> be unable to perform simple tasks, make simple decisions, and adapt
> to routine changes.

(PageID.70.) Thus it is plain that the ALJ provided several reasons for finding Plaintiff's allegations were less than fully credible. These reasons were specific enough to permit the Court to undertake a meaningful review. Furthermore, the reasons articulated by the ALJ are supported by substantial evidence and Plaintiff has not alleged otherwise. Accordingly, this claim fails.

### 3. Sentence Six Remand

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the

burden of making these showings. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Despite referencing the above authority, Plaintiff fails to satisfy his burden of showing the evidence was new, material, and that good cause existed for failing to submit it to the ALJ. Instead, Plaintiff notes that the evidence dated after the ALJ's decision documents a "worsening" of Plaintiff's back condition. (PageID.897.) To the extent Plaintiff argues his condition has worsened since the ALJ's decision, his recourse is in the filing of a new application for benefits, not a sentence six remand. Plaintiff's request for a sentence six remand is therefore denied.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

A separate judgment shall issue.


Dated: August 7, 2017            /s/ Janet T. Neff
                                 JANET T. NEFF
                                 UNITED STATES DISTRICT JUDGE